

# In the Missouri Court of Appeals
## Eastern District

WASHINGTON UNIVERSITY DOCKET

| | |
|---|---|
| ST. LOUIS POLICE LEADERSHIP ORGANIZATION, | No. ED103063 |
| Appellant, | Appeal from the Circuit Court of the City of St. Louis |
| vs. | |
| CITY OF ST. LOUIS, | Hon. David L. Dowd |
| Respondent, and JOHN DESPAIN AND CURTIS BURGDORF, | |
| Intervenors/Respondents. | FILED: March 22, 2016 |

## Introduction

Appellant St. Louis Police Leadership Organization ("SLPLO") appeals from the judgment of the trial court denying its Application for Preliminary and Permanent Injunction and entering judgment in favor of Respondent City of St. Louis ("City") on City's Petition for Declaratory Judgment. City decertified SLPLO as the exclusive collective bargaining representative of City police officers holding the rank of Sergeant pursuant to Rule 13 of City Police Department Manual. SLPLO subsequently filed suit alleging the decertification process violated Article I, Section 29 of the Missouri Constitution, the City Charter, Civil Service Rule XVIII, and Department of Personnel Regulation 147.

Because City's application of Rule 13 to decertify SLPLO did not violate Article I, Section 29 of the Missouri Constitution, the City Charter, Civil Service Rule XVIII, or Regulation 147, City lawfully decertified SLPLO as the exclusive collective bargaining representative of City police officers holding the rank of Sergeant. Accordingly, we affirm the judgment of the trial court.

### Factual and Procedural History

This dispute arises following the 2013 creation of a municipal police force for City, the control of which resided exclusively with City as opposed to a state-appointed Police Board (commonly referred to as "local control") and the subsequent decertification of SLPLO as the exclusive collective bargaining representative of City police officers holding the rank of Sergeant.

On September 1, 2013, following the passage of legislation establishing City's local control over law enforcement operating within its jurisdiction, City created its own police force. With this action, the St. Louis Metropolitan Police Department, which previously operated under authority of state law and the control of a state-appointed Police Board, became an internal department of City. Then Police Chief, Samuel Dotson ("Chief Dotson"), contemporaneously assumed the position of Police Chief for the newly-created City Police Department.

In 2014, Intervenor John DeSpain ("DeSpain") submitted a petition to Richard Frank ("Frank"), the City's Director of Personnel, seeking to decertify SLPLO as the exclusive bargaining representative for City police officers holding the rank of Sergeant. The petition to decertify purported to contain the signatures of more than 50% of the employees in the designated bargaining unit. Pursuant to Rule 13 of the St. Louis Metropolitan Police Department Police Manual ("Rule 13"), Chief Dotson appointed a committee to review the petition. Rule 13

2

was promulgated by the St. Louis Metropolitan Police Board prior to the assumption of local control over the police department by City. In early 2015, the committee appointed by Chief Dotson determined that the petition was authentic and contained the signatures of the majority of the employees in the designated bargaining unit. Chief Dotson then decertified SLPLO.

SLPLO subsequently filed suit against City seeking a declaratory judgment that the City's decertification of SLPLO was invalid. The trial court denied SLPLO's Application for Preliminary and Permanent Injunction, and instead entered a declaratory judgment in favor of City finding that Chief Dotson had the authority to decertify SLPLO as the exclusive bargaining representative under Rule 13, which the trial court found did not violate the Missouri Constitution, the City Charter, City Civil Service rules, or Department of Personnel regulations.

## I. Applicable Constitutional, Statutory, and Rule Provisions

Resolution of this dispute requires analysis of constitutional and statutory provisions, as well as several of City's personnel policies, administrative regulations, and ordinances. We begin our review with a brief description of the relevant provisions at issue.

### A. Article I, Section 29 of the Missouri Constitution

Article I, Section 29 of the Missouri Constitution, entitled "Organized labor and collective bargaining," provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." Art. I, Sec. 29.

### B. Section 105.510[1]

The procedural collective bargaining framework for most public employees in the State of Missouri is established by the State Board of Mediation. However, under Section 105.510, certain public employees, including police officers, are expressly exempted from the authority of the State Board of Mediation. Section 105.510.

---

[1] All statutory references are to RSMo. (2000).

3

C. City Charter, Civil Service Rule XVIII, and Regulation 147

Each of the provisions list herein addresses the role of the Director of Personnel as it may impact the issues on appeal. Article XVIII, Section 9 of the City Charter enumerates the Director of Personnel's general powers and duties and designates the Director of Personnel as the head of the Department of Personnel. Section 9(l) specifies that the Director of Personnel has the power "[t]o make such administrative regulations as he may deem necessary, not inconsistent with the charter, ordinances applicable, and these rules, relative to matters involved in the administration of the personnel provisions of such charter, ordinances, and rules." City of St. Louis Charter, Art. XVIII, Sec. 9(l). Civil Service Rule XVIII, enacted by the Civil Service Commission pursuant to the City Charter, addresses labor relations between City and City employees. Section 1(d) provides that the Director of Personnel is the "designated representative" relative to the provisions of Article XVIII of the City Charter. Department of Personnel Administrative Regulation 147 ("Regulation 147") "establishes a policy governing collective bargaining" with exclusive bargaining representatives and sets forth the Director of Personnel's role in said negotiations.[2] None of these provisions address procedures for the decertification of exclusive bargaining representatives.

D. City Ordinance 68630

City Ordinance 68630 was enacted on March 29, 2010, for the express purpose of adopting in full "all Police Manual Policies and Special Orders then in effect" should the State of Missouri pass legislation authorizing local control of the police force by City. Ordinance 68630 specified that "[s]aid policies and orders shall remain in effect until such time as they are specifically amended, repealed, superseded or replaced." The Ordinance expressed its purpose

---

[2] Regulation 147 specifies that, "pursuant to Ordinance #62234, the Director of Personnel is authorized to act as the City's Chief Negotiator in the collective bargaining process."

4

as assuring "the current uniformed and civilian employees of the St. Louis Metropolitan Police Department of the consistency and continuity of their employment status and benefits."

E. Rule 13

In August of 2011, prior to the assumption of local control of the police force by City, the Board of Police Commissioners promulgated Rule 13 of the St. Louis Metropolitan Police Department Police Manual, entitled "Labor Relations." Rule 13 states that, because police officers are excluded from the authority of the State Board of Mediation by Section 105.510, the Board of Police Commissioners "finds it necessary to establish a framework for certain public employees," later specified as police officers, "to engage in collective bargaining." Rule 13 addresses several aspects of labor relations between the Police Department and its employees. Section 13.004.J addresses decertification, providing as follows:

> In the event that the majority of the employees in a designated bargaining unit determine that they no longer wish to be represented by a recognized Labor Organization, they may revoke their designation of the Labor Organization by tendering a signed and dated petition for revocation to the Board of Police Commissioners. Upon receipt of such a petition, the Board of Police Commissioners will designate a five (5)-person Personnel Committee, made up of the Chief of Police and members of the Board of Police Commissioners, to investigate the veracity of the petition. If the Personnel Committee determines that the petition to revoke representation is authentic, they will so report to the Board of Police Commissioners, which will then revoke recognition of the Labor Organization.

F. Local Control Statute – Section 84.344

On November 6, 2012, Section 84.344 became effective, stating that "any city not within a county may establish a municipal police force on or after July 1, 2013," provided that the city "adopt an ordinance accepting responsibility, ownership, and liability as successor-in-interest for contractual obligations, indebtedness, and other lawful obligations of the board of police commissioners." Section 84.344. The stated purpose of the procedures and requirements found

5

in Section 84.344 was "to provide for an orderly and appropriate transition in the governance of the police force and provide for an equitable employment transition for commissioned and civilian personnel." Id.

Section 84.344.8 provides as follows:

> If the city not within a county elects to establish a municipal police force under this section, the city shall establish a separate division for the operation of its municipal police force. The civil service commission of the city may adopt rules and regulations appropriate for the unique operation of a police department. Such rules and regulations shall reserve exclusive authority over the disciplinary process and procedures affecting commissioned officers to the civil service commission; however, until such time as the city adopts such rules and regulations, the commissioned personnel shall continue to be governed by the board of police commissioner's rules and regulations in effect immediately prior to the establishment of the municipal police force, with the police chief acting in place of the board of police commissioners for purposes of applying the rules and regulations. Section 84.344.8.

G. City Ordinance 69489 and Creation of City Police Department

On July 2, 2013, City enacted Ordinance 69489 for the purpose of creating its own municipal police force. Ordinance 69489 provided that, effective September 1, 2013, "the City hereby accepts responsibility, ownership, and liability as successor-in-interest for contractual obligations, indebtedness, and other lawful obligations of the board of police commissioners of the Police Department."

On September 1, 2013, City created its own police force. The St. Louis Metropolitan Police Department became a department of the City, and Chief Dotson transitioned to become the Police Chief of the newly-created City Police Department.

II. Decertification of SLPLO

In 2012, prior to the assumption of local control by City, SLPLO was certified by the Board of Police Commissioners as the exclusive bargaining representative for police officers holding the rank of Sergeant. In October of 2013, following the transition to local control, City

6

and SLPLO began negotiations for a potential collective bargaining agreement. No agreement was ratified. During these negotiations, SLPLO was recognized by City as the exclusive bargaining representative for the aforementioned sergeants.

In 2014, DeSpain submitted a petition to decertify SLPLO as the exclusive bargaining representative to Frank. The petition purported to contain the signatures of more than 50% of the employees in the designated bargaining unit, as required by Rule 13. On January 21, 2015, a committee appointed by Chief Dotson determined that the petition was authentic and contained the signatures of the majority of the employees in the designated bargaining unit. That same day, Chief Dotson decertified SLPLO.

## III. Trial Court's Judgment

SLPLO filed suit against City on February 9, 2015, seeking a declaratory judgment in its favor. Specifically, SLPLO sought a judgment declaring (1) that City violated the Missouri Constitution by using Rule 13 to decertify SLPLO because the decertification provisions of Rule 13 violated Article I, Section 29 of the Missouri Constitution; (2) that Chief Dotson lacked authority to decertify SLPLO; and (3) that City violated the City Charter, Civil Service Rules, and administrative regulations by refusing to allow Frank to determine the manner in which to address the decertification petition. Two sergeants in the bargaining unit, DeSpain and Curt Burgdorf ("Burgdorf"), filed a motion to intervene, which was granted by the trial court.

On June 2, 2015, the trial court entered its Order and Judgment denying SLPLO's Application for Preliminary and Permanent Injunction and entering judgment in favor of City on City's Petition for Declaratory Judgment.

In its judgment, the trial court found that Rule 13's failure to provide a procedure allowing a challenge to a decertification petition did not violate Article I, Section 29 of the

7

Missouri Constitution. The trial court reasoned that Article I, Section 29 granted public employees the right to collectively bargain through representatives of their own choosing, but did not require a particular framework for doing so. Accordingly, the trial court found that City was "free to decide what procedural framework to apply to police" in the context of collective bargaining. Thus, the trial court concluded "[t]he absence of a procedure in the Rule to challenge the petition does not render Rule 13 unconstitutional."

The trial court next found that the failure of Rule 13 to require a vote to decertify a recognized labor organization did not violate Article I, Section 29. The trial court reasoned that the issue of a vote was moot because of confirmation that "a majority of the sergeants in the bargaining unit signed the decertification petition."

Third, the trial court found that City's adherence to the procedures of Rule 13 did not violate the City Charter, Civil Service Rule XVIII, or City Regulation 147. The trial court noted that when City created its own police force, City also "in accordance with Ordinance 68630 ... adopted the Police Manual, including Rule 13." The trial court further noted the lack of evidence that Rule 13 had been amended, repealed, superseded, or replaced. The trial court explained that while the City Charter, Civil Service Rule XVIII, and Regulation 147 authorize the Director of Personnel to make administrative regulations generally, "said regulations and authority need to be consistent with ordinances," including Ordinance 68630. Thus, the trial court reasoned, because "Ordinance 68630 adopted the Police Manual provisions, the Director [of Personnel] was not free to make regulations inconsistent with provisions of that manual which remain in effect, including Rule 13." For this reason, the trial court held that "[t]o the extent that Civil Service Rule XVIII and Regulation 147 also authorize the Director of Personnel to establish a

8

framework for decertification, they must also be consistent with Rule 13 per Ordinance 68630," as the "appropriate framework for decertifying [] SLPLO was Rule 13."

Finally, the trial court found that Chief Dotson was authorized to decertify SLPLO under Rule 13. The trial court explained that Rule 13 authorized the Board of Police Commissioners, not the Director of Personnel, to decertify a police bargaining representative. The trial court further concluded that, while the Board of Police Commissioners ceased to exist after September 1, 2013, the Police Chief—Chief Dotson—"now acts in place of the Board for the purpose of applying rules and regulations pertaining to commissioned officers," citing Section 84.344.8. The trial court reasoned that "[t]o hold otherwise would be contrary to the clear intent of Ordinance 68630, which was to continue in place the procedures contained in the Police Manual." This appeal follows.

## Points on Appeal

SLPLO raises three points on appeal. First, SLPLO contends the trial court erred in finding that City did not violate Article I, Section 29 of the Missouri Constitution when it applied Rule 13 to decertify SLPLO. Specifically, SLPLO argues the trial court erroneously declared and applied the law, in that Rule 13 did not provide SLPLO an opportunity to challenge the decertification petition, and did not require that a vote be held to determine whether SLPLO should be decertified as the exclusive bargaining representative. In its second and third points on appeal, SLPLO claims the trial court erred in finding that City did not violate the City Charter, Civil Service Personnel Rule XVIII, or Regulation 147 when it followed Rule 13 to decertify SLPLO. SLPLO argues the trial court's judgment is not supported by substantial evidence and erroneously declared and applied the law because City had a clear, unequivocal duty to follow its

9

own Charter, Civil Service Rules, and administrative regulations and failed to do so by following Rule 13.

## Standard of Review

We review court-tried cases, including the denial of a petition for declaratory judgment, under the standard set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. Questions of law, including those of statutory and constitutional interpretation, are reviewed *de novo*, "although if the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." White v. Director of Revenue, 321 S.W.3d 298, 308-310 (Mo. bane 2010).

## Discussion

### I. Point One—Article I, Section 29 of the Missouri Constitution

SLPLO maintains that the decertification process followed by City under Rule 13 was constitutionally deficient under Article I, Section 29 of the Missouri Constitution because (1) City did not provide SLPLO with an opportunity to challenge the decertification petition; and (2) City did not require a vote to be held to determine whether or not to decertify SLPLO. We disagree.

Article I, Section 29 of the Missouri Constitution, entitled "Organized labor and collective bargaining," provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." Art. I, Sec. 29. While the procedural collective bargaining framework for most public employees in the State of Missouri is established by the State Board of Mediation, police are expressly excluded from the authority

10

of the State Board of Mediation. Section 105.510. Missouri courts have recently interpreted Article I, Section 29 with regard to "excluded" employees. Notably, although there lacks a codified procedural framework for collective bargaining for "excluded" employees such as police, "the lack of a framework does not excuse the public employer from its constitutional duty to bargain collectively with public employees." Am. Federation of Teachers v. Ledbetter, 387 S.W.3d 360, 363 (Mo. banc 2012) (citing Indep.-Nat. Educ. Ass'n v. Indep. Sch. Dist., 223 S.W.3d 131, 136 (Mo. banc 2007) ("Independence")). Thus, public employers have a constitutional duty to bargain collectively with their employees, and, per the express language of Article I, Section 29, employees are constitutionally guaranteed the right to organize and bargain collectively.

SLPLO asserts that City has a very broad duty under this constitutional mandate, including a duty to provide a process for challenging a decertification petition by a vote. The constitutional duty of public employers to bargain collectively requires them to "meet and confer" with their employees regarding working conditions, and to bargain in good faith in doing so. Ledbetter, 387 S.W.3d at 367. Beyond this clear but limited duty, Missouri courts have consistently held that Article I, Section 29 does not require public employers to establish any specific procedural framework for facilitating the collective bargaining of their employees. In fact, Missouri courts have expressly recognized the limited reach of Article I, Section 29 by holding that for "excluded" employees, in the absence of a statute, the public employer has a "role ... [in setting] the framework for these public employees to bargain collectively through representatives of their own choosing." Independence, 223 S.W.3d at 136. See also W. Cent. Missouri Region Lodge #50 of Fraternal Order of Police v. City of Grandview, 460 S.W.3d 425, 443 (Mo. App. W.D. 2015) ("Grandview") ("[T]he Missouri Supreme Court has explicitly

11

acknowledged that public legislative bodies have the constitutional authority to establish collective bargaining frameworks for employees not covered by the Missouri public sector labor law.").

Our Western District has authoritatively articulated the Supreme Court's jurisprudence with respect to Article I, Section 29:

> Article I, section 29 merely serves to protect an employee's right to bargain collectively and does not purport to require any specific procedures within which to conduct collective bargaining activities by either employees or employers ... In the absence of wording in the Constitution that limit[s] the [public employer's] discretion as to how collective bargaining is to be conducted, the courts are without authority to establish standards for bargaining unit constructs, election processes, and the appropriate subjects for bargaining."

Grandview, 460 S.W.3d at 446-47.

As the Missouri Supreme court stated in Independence, "[i]f people want to change the constitution, the means are available to do so." Independence, 223 S.W.3d at 137. In the meantime, "there is .... no authority for this Court to read into the Constitution words that are not there." Id. Since the Supreme Court's holding in Independence, Missouri courts consistently have upheld several challenged frameworks and procedures for collective bargaining established by public employers as not infringing upon employees' constituted rights to organize and bargain collectively under Article 1, Section 29. See, e.g., E. Missouri Coal. of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield, 386 S.W.3d 755 (Mo. banc 2012) ("Chesterfield"); Grandview, 460 S.W.3d 425; Ledbetter, 387 S.W.3d 360.

Here, we find no express or implied policy in Article I, section 29 of the Missouri Constitution prohibiting City from establishing a framework for decertification through Rule 13. The record provides no indication that City failed to "meet and confer" in good faith with its employees with respect to collective bargaining. Further, and more importantly, the complained-

12

of provisions of Rule 13 do not infringe upon the police officers' constitutional rights to organize and bargain collectively. Whether or not SLPLO was provided an opportunity through Rule 13 to challenge the decertification petition had no effect on the employee police officers' right to bargain collectively.[3] Nor did the procedure in Rule 13 allowing decertification to occur by petition rather than a vote of the employees infringe upon the employees' right to bargain collectively, particularly when more than 50% of the members of the bargaining unit signed the decertification petition, rendering an election unnecessary. See Chesterfield, 386 S.W.3d at 764.

The trial court properly applied the law when it determined that Rule 13 did not violate Article I, Section 29. The trial court held that, while the Missouri Constitution grants public employees the right to collectively bargain through representatives of their own choosing, "it does not require a particular framework." Proceeding from this premise, the trial court held (1) that the absence of a procedure in Rule 13 to challenge the decertification petition does not render the Rule unconstitutional; and (2) that the absence of a provision requiring a vote to decertify a recognized labor organization need not be addressed because a majority of the sergeants in the bargaining unit signed the decertification petition. The trial court did not erroneously declare or apply the law in making either determination. Point One is denied.

## II.    Points Two and Three—Charter, Civil Service Rule XVIII, and Regulation 147

SLPLO further contends that City violated its Charter, Civil Service Rule XVIII, and Regulation 147 in applying Rule 13 to decertify SLPLO. SLPLO bases it argument on the fact that the Charter and City regulations vested Frank, the Director of Personnel, with the power and responsibility to direct all affairs of the Department of Personnel, and as a result, Frank was authorized exclusively to address and direct the decertification process. SLPLO maintains that

---

[3] We also note that, while Rule 13 itself did not contain a specific procedure for SLPLO to challenge the decertification petition, SLPLO was free to challenge the petition's validity in court, which it did not do.

City's use of Rule 13 to guide the decertification process disregarded Frank's vested authority in violation of the City Charter, Civil Service Rule XVIII, and Regulation 147. We are not persuaded.

The City Charter, Civil Service Rule XVIII, and Regulation 147 predate the transition of the City's police department to local control. Importantly, none of these provisions address the procedures for decertifying collective bargaining representatives. Only Rule 13 directly addresses the decertification process for collective bargaining units. Rule 13, contained in the St. Louis Metropolitan Police Department Police Manual, was promulgated by the Board of Police Commissioners in August of 2011—also prior to local control—in order to "establish a framework" for police officers "to engage in collective bargaining." Section 13.004.J addresses decertification, providing a step-by-step procedure for the decertification of an exclusive bargaining representative:

> In the event that the majority of the employees in a designated bargaining unit determine that they no longer wish to be represented by a recognized Labor Organization, they may revoke their designation of the Labor Organization by tendering a signed and dated petition for revocation to the Board of Police Commissioners. Upon receipt of such a petition, the Board of Police Commissioners will designate a five (5)-person Personnel Committee, made up of the Chief of Police and members of the Board of Police Commissioners, to investigate the veracity of the petition. If the Personnel Committee determines that the petition to revoke representation is authentic, they will so report to the Board of Police Commissioners, which will then revoke recognition of the Labor Organization.

The question before us is whether City, through Chief Dotson, properly exercised authority to decertify SLPLO pursuant to the procedures set forth in Rule 13 in light of the responsibilities granted to Frank as Director of Personnel under the City Charter, Civil Service Rule XVIII, and Regulation 147. Our analysis requires two separate but related inquiries: first,

14

whether Rule 13 was in effect at the time of SLPLO's decertification; and second, whether the City's use of Rule 13 to address the decertification petition violated any of the above provisions.

A. Rule 13 was in effect at the time City decertified SLPLO.

Prior to local control, City promulgated Ordinance 68630, a forward-thinking ordinance addressing a long-sought-after hope that the State of Missouri would enact legislation allowing City to maintain and control its own police force. The language of Ordinance 68630 is clear and unequivocal in stating that in the event of such an occurrence, City would "[a]dopt in full, as of the effective date of said state legislation, all Police Manual Policies and Special Orders then in effect." Ordinance 68630 also specified that "[s]aid policies and orders shall remain in effect until such time as they are specifically amended, repealed, superseded or replaced."

Legislation enabling local control was subsequently passed in Missouri. On November 6, 2012, Section 84.344 became effective, stating that "any city not within a county may establish a municipal police force on or after July 1, 2013." Section 84.344. Rule 13 was contained within the Police Manual when Section 84.344 became effective on November 6, 2012. Neither party has introduced evidence or otherwise asserted that Rule 13 was amended, repealed, superseded, or replaced at any point prior to City's decertification of SLPLO. The record clearly establishes that, pursuant to Ordinance 68630, City adopted Rule 13 on November 6, 2012, and that Rule 13 remained in effect when SLPLO was decertified in 2015.

We further note that the language of Section 84.344.8 is unequivocal in specifying that unless and until City establishes new rules and regulations for the operation of its police department, "the commissioned personnel shall continue to be governed by the board of police commissioner's rules and regulations in effect immediately prior to the establishment of the municipal police force, *with the police chief acting in place of the board of police commissioners*

15

*for purposes of applying the rules and regulations.*" Rule 84.344.8 (emphasis added). Accordingly, Chief Dotson properly and lawfully acted in the place of the Board of Police Commissioners in following the procedure outlined in Rule 13 for verifying the decertification petition.

B. Rule 13 does not violate the City Charter, Civil Service Rule XVIII, or Regulation 147.

Having determined that Rule 13 was in effect at the time SLPLO was decertified, and that Chief Dotson lawfully acted in the place of the Board of Police Commissioners under Rule 13, we are left to consider whether Rule 13 violates the City Charter, Civil Service Rule XVIII, or Regulation 147. SLPLO argues that these personnel-related Charter provisions and rules render Rule 13 void because Frank is vested under these provisions with exclusive authority to handle *all* matters regarding collective bargaining. SLPLO's argument is unavailing.

The City Charter, Civil Service Rule XVIII, and City Regulation 147 do not address decertification of a collective bargaining representative or the decertification process. The City Charter simply vests the Director of Personnel with the general authority to direct all affairs of the Department of Personnel, including the power "[t]o make such administrative regulations as he may deem necessary, not inconsistent with the charter, ordinances applicable, and these rules, relative to matters involved in the administration of the personnel provisions of such charter, ordinances, and rules." City of St. Louis Charter, Art. XVIII, Sec. 9(l). Neither Frank nor any prior Director of Personnel promulgated any administrative regulations dealing with the decertification process. Similarly, neither Civil Service Rule XVIII nor Regulation 147 addresses decertification. Civil Service Rule XVIII generally addresses labor relations between City and City employees, but states nothing about decertification. Although Regulation 147

16

establishes a policy governing collective bargaining with exclusive bargaining representatives and defines the Personnel Director's role in said negotiations, the Regulation similarly fails to address decertification. Instead, Rule 13 is City's *only* rule or regulation providing a procedural framework for decertification of a recognized labor organization. We acknowledge that each of the above provisions vests the Director of Personnel with general authority to make administrative regulations and direct the affairs of the Department of Personnel; however, this authority is tempered by the express language of the City Charter which requires all administrative regulations be consistent with applicable ordinances, including in relevant part here Ordinance 68630. As previously explained, Ordinance 68630 specified that City adopted all Police Manual provisions, including Rule 13.

The City Charter, Civil Service Rule XVIII, and City Regulation 147 do not address decertification or set forth any procedures for decertifying exclusive bargaining representatives. Thus, not only were these provisions inapplicable in the decertification context, but Rule 13 does not conflict with their terms. Additionally, City expressly adopted and agreed to operate under Police Manual provisions, including Rule 13, until it adopted rules and procedures to replace them. City has yet to adopt any rules or regulations with respect to Rule 13. Accordingly, the trial court did not erroneously declare or apply the law in holding that City did not violate the City Charter, Civil Service Rule XVIII, or Regulation 147 by applying Rule 13 to decertify SLPLO. Further, the trial court's holding is supported by substantial evidence. Points Two and Three are denied.

17

## Conclusion

Because the trial court's judgment accurately interprets, declares and applies the law, and is further supported by substantial evidence, the judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Presiding Judge

Angela T. Quigless, J., and Philip M. Hess, J., concur.