Alok Ahuja, Judge
Appellant Joshua Fay appeals from a judgment of the Circuit Court of Linn County, which declared him ineligible to run as a candidate for Associate Circuit Judge. The circuit court found that Fay was disqualified from running pursuant to § 115.306.1,[1] because he had pled guilty to three felony offenses in 1995. The circuit court held that Fay's earlier guilty pleas rendered him ineligible despite the fact that he had received a gubernatorial pardon for those offenses. We affirm.
Factual Background
In February 1995, when Fay was seventeen years old, he pleaded guilty in the Circuit Court of Chariton County to two counts of tampering in the first degree, a class C felony in violation of § 569.080.1(2), RSMo 1994, and to one count of the class D felony of property damage in the first degree, in violation of § 569.100, RSMo 1994. In April 1995, the circuit court suspended the imposition of sentence on all three counts, and placed Fay on supervised probation for three years. Fay successfully completed his probation. By statute, the official records of the case are closed. See §§ 610.105.1, 610.120.1.
*755 In 2003, Fay was admitted to practice law in Missouri, after passing the bar examination and the Supreme Court's character and fitness investigation. Since then, Fay has been practicing law as a licensed member of the Missouri bar in good standing.
In 2016, Governor Nixon pardoned Fay for all three felonies to which he had pled guilty in 1995. The pardon provided:
I, JEREMIAH W. (Jay) NIXON, GOVERNOR OF THE STATE OF MISSOURI, have had presented to me a request for the pardoning of Joshua Fay who was on the 6th day of April 1995, by judgment of the Circuit Court of Chariton County, convicted of two counts of tampering and one count of property damage. After examination of the application and the facts relevant thereto, I hereby grant to Joshua Fay a full pardon from the above convictions. This pardon obliterates said convictions so that I hereby restore to him all rights of citizenship forfeited by said convictions and remove from him any legal disqualification, impediment, or other legal disadvantage that may be a consequence of said convictions.
Fay wants to run for election for the position of Associate Circuit Judge in Linn County. He initially intended to run in the Democratic primary election to be held on August 7, 2018. To be placed on the primary ballot, a candidate must submit a declaration stating, in part, that "if nominated and elected to such office I will qualify." § 115.349.3. There is no dispute that Fay meets the basic qualifications for an Associate Circuit Judge established by Article V, § 21 of the Missouri Constitution : he is over the age of twenty-five; is registered to vote in Linn County; and has been a member of the Missouri Bar in good standing since 2003. In addition, Fay has lived in Linn County for more than one year, and thus meets the residency requirement of § 478.320.6. A putative candidate must also meet the requirements of § 115.306.1, however. It provides that
[n]o person shall qualify as a candidate for elective public office in the state of Missouri who has been found guilty of or pled guilty to a felony under the federal laws of the United States of America or to a felony under the laws of this state or an offense committed in another state that would be considered a felony in this state.
Fay was uncertain concerning his eligibility to run for office under § 115.306.1, in light of his 1995 guilty pleas and subsequent pardon. Accordingly, on January 12, 2018, he filed a petition in the Circuit Court of Linn County seeking a declaration as to his eligibility to run for Associate Circuit Judge. Pursuant to § 115.015, Fay named County Clerk Suzan Stephenson as the defendant. After the Petition was filed, Judge Scot Othic, the incumbent Linn County Associate Circuit Judge whom Fay seeks to challenge, was granted leave to intervene.
The parties agreed to submit the case to the court based on the facts alleged in the petition, and the arguments of counsel.
The circuit court[2] issued its judgment on February 26, 2018. The judgment first rejected Judge Othic's motion to dismiss. The court found that Fay did not have an available statutory remedy to obtain an adjudication of his own eligibility for office before filing a declaration of candidacy, and that Fay presented a controversy which was ripe for decision.
On the merits, the court ruled that, under controlling decisions of the Missouri Supreme Court, the pardon Fay received *756 only extinguished the fact of his convictions , but not the fact of his guilty pleas. Because § 115.306.1 disqualifies any individual who has "pled guilty ... to a felony under the laws of this state," not simply persons who have been convicted of felonies, the court concluded that Fay remained ineligible to run for public office despite his gubernatorial pardon. The circuit court expressed reservations concerning the limited effect given to gubernatorial pardons by the Supreme Court's decisions; the court nevertheless considered itself bound to follow those decisions. The circuit court closed its analysis with the observation "[d]ura lex sed lex "-the law is harsh, but it is the law.
Fay appeals. He initially filed his appeal in the Missouri Supreme Court. No. SC97040. Fay contended that, because he argued that the circuit court's interpretation of § 115.306.1 violated the Governor's pardon power under Article IV, § 7 of the Missouri Constitution, his appeal invoked the Supreme Court's exclusive jurisdiction under Article V, § 3 of the Constitution. The Supreme Court transferred the case to this Court, "where jurisdiction is vested," in an order entered on April 9, 2018. See Mo. Const. Art. V, § 11.
Standard of Review
When reviewing a declaratory judgment, our standard of review is the same as in any other court-tried case. This Court will affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976).
Lueckenotte v. Lueckenotte , 34 S.W.3d 387, 393 (Mo. banc 2001) (other citation omitted). "Questions of law, including those of statutory and constitutional interpretation, are reviewed de novo. " St. Louis Police Leadership Org. v. City of St. Louis , 484 S.W.3d 882, 888 (Mo. App. E.D. 2016).
Discussion
On appeal, Fay argues that the circuit court's decision fails to give full effect to the gubernatorial pardon he received in 2016. We disagree.
Article IV § 7 of the Missouri Constitution provides that:
[t]he governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. The power to pardon shall not include the power to parole.
As noted in our discussion of the facts, § 115.306.1 provides in relevant part that "[n]o person shall qualify as a candidate for elective public office in the state of Missouri who has been found guilty of or pled guilty to ... a felony under the laws of this state."
I.
Before discussing the arguments Fay raises, we address three preliminary matters. First, on April 30, 2018, Judge Othic filed a motion to dismiss the appeal, strike Fay's Brief, or in the alternative to join the Attorney General, based on Judge Othic's contention that Fay was attempting to assert an unpreserved challenge to the constitutionality of § 115.306.1. We do not read Fay's arguments as raising a constitutional challenge to the statute. Instead, Fay argues that § 115.306.1's disqualification provisions should not be read to apply to someone who has received a gubernatorial pardon under Article IV, § 7. Fays argues that, by virtue of his *757 pardon, he should not be considered to be someone who has "pled guilty to ... a felony" within the meaning of § 115.306.1. This is an issue of statutory interpretation, not a constitutional challenge. Cf. City of Slater v. State , 494 S.W.3d 580, 585 (Mo. App. W.D. 2016) (to invoke Supreme Court's exclusive jurisdiction, " 'the constitutionality of the statute must be directly challenged. To say that a statute would be unconstitutional if construed in a certain manner does not meet the requirement.' " (quoting Knight v. Calvert Fire Ins. Co. , 260 S.W.2d 673, 675 (Mo. 1953) ) ). The Supreme Court's order transferring the case to this Court confirms that Fay's arguments do not attack the constitutionality of § 115.306.1. Judge Othic's motion to dismiss is denied.
Second, we note that, while this appeal was pending, the deadline passed for filing applications to run in the August 2018 Democratic primary election. Fay now asserts that he intends to run for Associate Circuit Judge as an independent candidate, for which he faces a July 30, 2018 filing deadline. As with the Democratic primary, to run as an independent Fay would have to file a declaration stating that he would qualify for office if elected, see § 115.327, which again raises the question whether he is rendered ineligible by operation of § 115.306.1. No party has argued that the justiciability of this case is affected by the fact that Fay now intends to run as an independent candidate, rather than as a candidate in the Democratic primary. We conclude that Fay's appeal was not mooted by the passage of the filing deadline for the Democratic primary.
Finally, we recognize that there may be some question whether the Governor's constitutional pardon power even extends to the sort of disposition which Fay received in 1995: probation and a suspended imposition of sentence. Article IV, § 7 gives the Governor the power to pardon persons only "after conviction." The Missouri Supreme Court interpreted this phrase in 1887 to mean that the Governor's pardon power applies "after a return of a verdict of guilty." Ex parte Collins , 94 Mo. 22, 6 S.W. 345, 346 (1887). More recently, however, the Court has held that dispositions of criminal charges which result in a suspended imposition of sentence generally are not considered to be "convictions" under state law for purposes of imposition of collateral consequences on an offender. See Yale v. City of Independence , 846 S.W.2d 193, 196 (Mo. banc 1993). If Fay was not "convicted" in 1995, the Governor arguably had no authority to pardon him, and the pardon issued in 2016 would be ineffective. Given our conclusion that Fay's reliance on his gubernatorial pardon fails for other reasons, we need not decide the underlying validity of Fay's pardon.
II.
Turning to the merits, a pair of Missouri Supreme Court decisions requires us to find that, although Fay's pardon extinguished the fact of his felony conviction , it did not erase the fact that he had pled guilty to three felonies. Because § 115.306.1 is triggered by the fact of a felony guilty plea, rather than by the fact of a felony conviction, the statute operates to disqualify Fay from running for office, despite his pardon.
The first decision which dictates the result here is Guastello v. Department of Liquor Control , 536 S.W.2d 21 (Mo. banc 1976). In Guastello , an applicant for a liquor license (Guastello) had previously pled guilty to two charges of selling intoxicating liquor on a Sunday. Id. at 22. Guastello later received a full gubernatorial pardon. Id. The statute involved in Guastello disqualified applicants from receiving a liquor license based on a "(1) lack of good moral character, or (2) a conviction *758 under a liquor law." Id. Although Guastello was initially able to obtain a liquor license, his application for renewal was denied based on the second factor-his prior convictions for selling alcohol on Sunday. Id.
The Supreme Court noted that courts in other jurisdictions had adopted three different approaches concerning the effect of an executive pardon:
View #1 is that conviction and guilt are both wiped out and obliterated. Thus, it makes the offender as if he had not committed the offense in the first place.
View #2 is that the fact of conviction is obliterated but the guilt remains. Under this view, if disqualification is based solely on the fact of conviction the eligibility of the offender is restored. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified-merely as a result of the pardon.
View #3 is that neither the fact of conviction nor the guilt are obliterated-only the punishment. Under this view, a pardon would have no effect whatsoever on disqualification statutes like that in question. The sole effect would be to excuse any portion of the punishment not then suffered-plus, perhaps, removal of certain 'civil disabilities.'
536 S.W.2d at 23 (footnotes omitted).
The Supreme Court in Guastello chose to follow the second approach, under which "the fact of conviction is obliterated but the guilt remains." Under this rule,
if the mere conviction involves certain disqualifications which would not follow from the commission of the crime without conviction, the pardon removes such disqualifications. On the other hand, if character is a necessary qualification and the commission of a crime would disqualify even though there had been no criminal prosecution for the crime, the fact that the criminal has been convicted and pardoned does not make him any more eligible.
Id. at 24 (citation and internal quotation marks omitted). The Court held that, because Guastello's prior convictions had been "obliterated" by his pardon, he could not be denied a liquor license based solely on the fact of those prior convictions. Id. at 24-25.
In Hill v. Boyer , 480 S.W.3d 311 (Mo. banc 2016), the Supreme Court interpreted Guastello to hold that, if a statute disqualifies an individual based on the fact of a guilty plea , rather than the fact of conviction , a gubernatorial pardon does not remove the disability. In Hill , a 2013 applicant for a concealed-carry firearms permit (Hill), had pled guilty in 1973 to felony forgery. Id. at 313. Hill was sentenced to a two-year term of imprisonment in the forgery case, but the court suspended execution of his sentence, and placed him on probation for two years. Id. Hill successfully completed his probation. Id. Under § 549.111.2, RSMo 1969, Hill's successful completion of probation "restored [to him] all the rights and privileges of citizenship." Id. Hill applied for a concealed carry permit, but the application was denied under what is now § 571.101.2(2), which renders ineligible any person who has "pled guilty to ... a crime punishable by imprisonment for a term exceeding one year...."
Hill argued that, under Guastello , the "statutory restoration of rights [under § 549.111.2, RSMo 1969 ] is legally equivalent to a governor's pardon" and should have "the effect of negating the fact of his prior conviction." Hill , 480 S.W.3d at 314. The Supreme Court disagreed. Even assuming that Hill's completion of probation was the equivalent of a gubernatorial pardon, the Court held that a pardon does not erase the fact that an individual has previously pled guilty to a criminal offense.
*759 Mr. Hill's case is materially distinguishable from Guastello . The statute at issue in Guastello disqualified applicants based solely on the existence of a prior conviction. In contrast, section 571.101.2( [2] ) bars a sheriff from issuing a concealed carry permit to individuals who "pled guilty to" or were convicted of an offense with an authorized punishment of more than one year of imprisonment. The Guastello Court recognized the distinction between disqualifying an applicant based on the existence of a prior conviction as opposed to the fact of a prior guilty plea :
[I]f disqualification is based solely on the fact of conviction the eligibility of the offender is restored. On the other hand, if good character (requiring an absence of guilt) is a necessary qualification, the offender is not automatically once again qualified-merely as a result of the pardon.
[ Guastello , 536 S.W.2d] at 23. Even if this Court assumes for the sake of argument that Mr. Hill's statutory restoration of rights "obliterated" the fact of his prior conviction, the fact that he pleaded guilty is not negated because " Guastello held only that the fact of conviction was obliterated and not the fact of guilt." State v. Bachman , 675 S.W.2d 41, 51 (Mo. App. W.D. 1984). Therefore, "an offender's conviction (pertaining to guilt as opposed to the mere conviction) [can] be considered and used in future determinations involving an offender." Id.
Hill , 480 S.W.3d at 314-15 (emphasis added).
We followed Hill in Stallsworth v. Sheriff of Jackson County , 491 S.W.3d 657 (Mo. App. W.D. 2016), where we held that an individual who had received a pardon for an earlier felony was disqualified from receiving a concealed-carry permit. We reasoned that, while the applicant's pardon "obliterate[d] the fact of his conviction," his "guilt-evidenced by his guilty pleas-remained." Id. at 660. "[B]ecause the guilty plea is a separate disqualifier that is not obliterated by the pardon, section 471.101.2( [2] ) bars Stallsworth from receiving a concealed carry permit." Id.
Under these decisions, while the Governor's pardon of Fay "obliterated" the fact of his criminal conviction, it did not extinguish the fact that he pled guilty in 1995 to three felonies.[3] Section 115.306.1 disqualifies any person who has "pled guilty" to certain offenses from running for elective office. Fay is a person who has "pled guilty" to a relevant offense, despite the fact that he was later pardoned. He is therefore disqualified from running for elective office, as the circuit court correctly declared.
Fay argues that, under Missouri's case law, a gubernatorial pardon has the effect of eliminating any automatic disqualifications flowing from the commission of a pardoned offense; following a pardon, guilt for the underlying offense may only be considered as part of a fact-specific, individualized assessment of character, where good character is a statutory qualification for a particular right or benefit. As we have explained above, however, the most recent decision of the Missouri Supreme Court did not rely on any distinction between automatic and character-based disqualification. Instead, that decision drew a distinction between the consequences which flow from the fact of conviction , and *760 the consequences which flow from the fact of guilt (including the fact of a guilty plea ). The disqualification at issue in Hill , and in this Court's Stallsworth decision, flowed automatically from the applicant's status as someone who had "pled guilty" to a relevant offense. Yet the Supreme Court and this Court both held that the disqualification applied, despite a gubernatorial pardon or its functional equivalent.
We share the circuit court's concern that the Hill decision sharply limits the effect of a pardon issued pursuant to the authority granted to the Governor by Article IV, § 7 of the Missouri Constitution. Hill affords decisive significance to the particular wording of a disqualification statute: whether it refers to persons "convicted" of a particular offense, or instead to those who pled or were found guilty of that offense. By placing such emphasis on the language used in a particular statute, Hill places control over the effect of a gubernatorial pardon largely-if not wholly-in the hands of the General Assembly. Hill gives the legislature power to dictate the effect of gubernatorial pardons despite the fact that the Constitution gives the pardon power to the executive rather than the legislative branch, and authorizes the Governor to issue pardons "upon such conditions and with such restrictions and limitations as he may deem proper." As the circuit court recognized, despite our reservations we are constrained to follow Hill unless and until that decision is modified or overruled by the Supreme Court. Mo. Const. Art. V, § 2.
Conclusion
The judgment of the circuit court is affirmed.
All concur.

Unless otherwise indicated, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, as updated by the 2017 Supplement.

Associate Circuit Judge Karl DeMarce of the First Judicial Circuit in Scotland County was assigned by the Chief Justice to preside over this case as a special judge.

Notably, the pardon Fay received states that it had the effect of restoring the rights "forfeited by said convictions ," and removing the disabilities imposed as "a consequence of said convictions. " (Emphasis added.) The pardon does not purport to extinguish any consequences which may flow from Fay's guilt for the underlying offenses, or from his admissions of guilt.